FILED

2014 Aug-26  PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

GEORGE OWENS, et al.,            )
                                 )
            Plaintiffs;          )
                                 )
vs.                              )            7:13-cv-00832-LSC
                                 )
NATIONWIDE PROP. & CAS.          )
INS. CO.,                        )
                                 )
            Defendant.           )

MEMORANDUM OF OPINION

Before the Court is Defendant Nationwide Property and Casualty Insurance

Company's ("Nationwide") motion for summary judgment. (Doc. 90.) Also pending

is a motion to strike evidence submitted in support of the Plaintiffs' reply to

Nationwide's motion for summary judgment. (Doc. 95)  For the reasons stated below,

the motion for summary judgment is due to be granted in part and denied in part, and

the motion to strike is due to be denied as moot.

I.      Background[1]

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed
to be undisputed, their respective responses to those submissions, and the Court's own examination
of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the
nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir.
2002). These are the "facts" for summary judgment purposes only. They may not be the actual

On April 27, 2011, a tornado struck Tuscaloosa, Alabama, damaging the home of Plaintiffs George and Laura Owens ("the Plaintiffs"). At that time, the Plaintiffs insured their home with Nationwide. After the storm, they filed a claim with Nationwide, and Nationwide assigned J. Drew Mayfield ("Mayfield") to adjust the claim.

Mayfield first went to evaluate the damage to the Plaintiffs' home on May 3, 2011. At some point, Mayfield asked the Plaintiffs whether they had hired a contractor, and they informed him that they were unable to get one. According to the Plaintiffs, Mayfield specifically recommended GBS Roofing & Restoration ("GBS") to them.

Mayfield worked with GBS before on a prior trip in April 2011, adjusting tornado damage claims in Sanford, North Carolina. In addition, Mayfield had worked with Brian Smith, the son of the owner of GBS, George Smith ("Smith"). Mayfield recommended GBS for several packouts in North Carolina, but had no experience with GBS's work on anything beyond packouts. "Packouts" are a type of job where contents of a damaged home are removed to prevent further damage to those contents. Brian Smith was not with GBS in Alabama.

During Mayfield's first meeting with the Plaintiffs it began to rain on their

---

facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

home's exposed roof. Mayfield called  GBS to come immediately and help tarp the roof. Smith, along with a GBS employee came to the residence to assist in placing a tarp over the roof.  At this first meeting, Smith offered the Plaintiffs GBS's services to repair their home and gave them a contract to look over. Smith told the Plaintiffs that GBS was a " Nationwide Blue Ribbon Preferred Contractor." Mayfield did not directly affirm this statement, but according to the Plaintiffs, Mayfield was present when the statement was made and did not deny it. GBS was not, in reality, a Nationwide Blue Ribbon Preferred Contractor.

At some point during this meeting, Mayfield left the Plaintiffs' home and returned with Bridget Chiaramonte (" Chiaramonte" ). Chiaramonte was a GBS employee, but the Owens believed that she was a Nationwide employee because she arrived with Mayfield and was dressed similarly to him in a blue shirt and khakis. Chiaramonte comforted the Plaintiffs, directed Mayfield's attention to various parts of the house that needed fixing, and wrote her number on the back of one of Smith's GBS business cards, directing the Plaintiffs to call her if they needed anything. The Plaintiffs did later call her number, under the belief that she was a Nationwide employee, but did not speak to Chiaramonte again.[2]

---

[2] Plaintiffs assert that Mayfield and Chiaramonte were involved in a romantic relationship during this time, and that Mayfield used his position as a Nationwide adjuster to steer business towards Chiaramonte and GBS. This romantic relationship is denied by Mayfield but supported by

After this meeting, Smith returned almost daily to the Plaintiffs' home in an effort to convince them to hire GBS to perform the repair work on their home. The Plaintiffs had the GBS contract in their possession for two weeks before they decided to hire GBS. The Plaintiffs also performed limited research on GBS over the internet and made further attempts to hire a local contractor. At some point before signing the contract, they met with Mayfield a second time, and he again recommended GBS's services and informed the Plaintiffs that he was friends with someone at GBS. On May 16, the Owens signed the contract with GBS. On June 16, 2011, the Plaintiffs wrote GBS a check for $30,000, a 50 percent deposit for the planned work. Prior to GBS beginning the repair work, GBS was hired to perform packout and tree removal work on the Plaintiffs' home, and Nationwide prepared a check jointly made out to GBS and the Plaintiffs to pay for this service. GBS began performing repair work on the Plaintiffs' home around July 4, 2011. Plaintiffs subsequently began to have serious doubts about GBS's performance and met with Mayfield who, once again, urged the Plaintiffs to give GBS more time to perform the work. On July 20, 2011, the Plaintiffs fired GBS.

---

his admission that Chiaramonte stayed in his hotel room in Tuscaloosa and the fact that they later married. Mayfield stated that he was aware that Chiaramonte was working in sales for GBS, that she would be paid commissions for sales, and that she went with him to meet some Nationwide insureds, but he believed that she did not do so "as an employee of GBS." (Doc. 93-1, p. 25).

The Plaintiffs demanded the return of the money they had paid Smith. While GBS made multiple offers to return part of the funds, no refund was ever made.

The Plaintiffs then hired Ray Blackwood ("Blackwood"), another contractor, to repair their home. It is disputed as to whether Blackwood completely repaired the Plaintiffs' home. The Plaintiffs contend that they did not have the money to pay Blackwood to return the home to its pre-tornado condition. The Plaintiffs paid Blackwood $60,000 to perform his work and also paid additional money out of pocket for other repairs to their home. The Plaintiffs have no complaints concerning Blackwood's work, but say they simply did not have the money to pay him to fully repair their home, but only to have him return it to a livable condition.

Under the insurance contract, Nationwide paid Plaintiffs a total of $167,665.50; specifically paying $123,481.23 under Plaintiffs dwelling coverage, $4,018.32 under coverage for other structures, and $26,900.13 for Additional Living Expenses. Nationwide's liability under Plaintiffs dwelling coverage was limited to $138,400. Under the insurance contract, Nationwide was obligated to pay the cost to repair or replace Plaintiffs' home without deduction for depreciation, up to the applicable limit of liability.

The Plaintiffs ultimately filed this action against Nationwide, seeking compensatory damages for their economic loss, emotional distress, mental anguish,

and punitive damages.

II.    Standard of Review

Summary judgment is appropriate " if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is " material" if it " might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a " genuine dispute" as to a material fact     " if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The trial judge should not weigh the evidence but must simply determine where there are any genuine issues that should be resolved at trial. *Id.* at 249.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by " considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, " the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions for summary judgment, " [s]ummary judgment procedure is properly regarded not as

a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

III.    Discussion

The Plaintiffs' amended complaint is organized into eleven counts. Counts I-III assert claims for breach of contract of repair, negligent and wanton performance of contract of repair, and fraud against GBS, and assert that Nationwide is liable to Plaintiffs under these counts because GBS acted as its agent. Counts IV and V assert claims against Nationwide for breach of the insurance contract and negligent and wanton performance of that contract. Counts VI and VII allege that Nationwide breached a contract of repair and negligently and wantonly performed that contract. Counts VIII and IX assert fraud claims against Nationwide. Count X makes a claim for negligent and wanton supervision against Nationwide, while Count XI alleges that Nationwide should be held vicariously liable for the acts of Mayfield. Nationwide seeks summary judgment on all claims against it.

A.    Nationwide's Liability for the Actions of GBS - Counts I, II, III, VI, and VII

The first three counts of Plaintiffs' complaint rely on the premise that Nationwide is vicariously liable for the actions of GBS because GBS acted as its agent. Counts VI and VII, alleging that Nationwide breached a contract of repair or

performed such a contract negligently or wantonly, also depend upon there being an agency relationship between Nationwide and GBS such that Nationwide elected to repair the Plaintiffs' home.

Nationwide's argument for summary judgment on these claims is solely that Nationwide is not liable for GBS's actions, not that GBS did not commit the underlying acts necessary to sustain these claims. Therefore, to survive summary judgment, Plaintiffs must present substantial evidence indicating the existence of an agency relationship. *Dickinson v. City of Huntsville*, 822 So. 2d 411, 416 (Ala. 2001). An agency relationship may be demonstrated by actual authority or by apparent authority. *John Deere Const. Equip. Co. v. England*, 883 So. 2d 173, 178-79 (Ala. 2003).

To determine the existence of an actual agency relationship, the Court looks at whether the principal has a "right of control" over the actions of the alleged agent. *Sawyer v. Chevron U.S.A., Inc.*, 421 So. 2d 1263, 1264-65 (Ala. 1982). The right of control test considers four factors: "(1) direct evidence of the right or exercise of control; (2) the method of payment used; (3) whether the alleged principal has the right to terminate employment; and (4) the right to control another's time." *Dickinson*, 822 So. 2d at 416.

The only evidence of Nationwide's right to control GBS's work that has been presented by Plaintiffs is a check for tree removal from Nationwide made out to both

GBS and the Plaintiffs and that Nationwide initially brought GBS to the Plaintiffs' home. Therefore, there is not substantial evidence that Nationwide and GBS were in an actual agency relationship.

A principal can also be held liable for the actions of a purported agent if there is apparent agency. *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 777-78 (Ala. 1998); *Malmberg v. Am. Honda Motor Co.*, 644 So. 2d 888, 891 (Ala. 1994). "The doctrine of apparent authority is based upon the actions of the principal, not those of the agent; it is based upon the principal's holding the agent out to a third party as having the authority upon which he acts, not upon what one thinks an agent's authority might be or what the agent holds out his authority to be." *Malmberg*, 644 So. 2d at 891.

In *Malmberg*, the Court determined that evidence that Honda logos were displayed upon signs, literature, products, plaques and brochures at a dealership was not in itself sufficient to create an inference of agency. *Id.* (citing *Wood v. Shell Oil Co.*, 495 So. 2d 1034, 1039 (Ala. 1986)). However, the Court found that there was a genuine issue of material fact as to whether the dealership was Honda's agent with respect to warranties because, combined with the display of the Honda logo, Honda only provided the warranty through Honda dealerships and instructed and trained the dealerships concerning the warranty. *Id.* at 891.

Nationwide argues that there is no apparent agency in this case because Nationwide never held GBS out as their agent. Taking the evidence in the light most favorable to Plaintiffs, Nationwide, through Mayfield, called GBS to the Plaintiffs' home, made repeated assurances as to the quality of GBS work, and allowed Smith to present GBS as a "Nationwide Blue Ribbon Preferred Contractor." After the Plaintiffs began to experience problems dealing with GBS, Nationwide "stood up for" GBS and counseled the Plaintiffs to give them more time. (Doc. 87-3, p. 56-57). Taking the facts in the light most favorable to the Plaintiffs, these actions provide substantial evidence that would allow a reasonable jury to conclude that, through Mayfield, Nationwide held out GBS as its agent. Therefore, summary judgment is due to be denied on Counts I, II, III, VI, and VII of the Complaint.

B.     Breach of the Insurance Contract - Count IV

In order to survive summary judgment on a breach of contract claim, the Plaintiffs "must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001) (quoting *Southern Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995)) (internal quotation marks omitted). The first two elements are not disputed in this case. Nationwide argues that summary judgment is proper on the Plaintiffs'

breach of contract claim because the Plaintiffs' are unable to show either nonperformance by Nationwide or any damages. Nationwide argues that it has fully performed because it paid the Plaintiffs the cost to repair their home in accordance with the terms of the insurance policy, and in fact argues that the Plaintiffs fully repaired their home for $90,000 and that therefore the Plaintiffs were overcompensated. Similarly, Nationwide argues that the Plaintiffs have no damages because they were able to fully repair their home for less than the amount paid to them by Nationwide.

As a general matter, Alabama law does not permit recovery for "personal injury, inconvenience, annoyance and suffering" in actions for breach of insurance contracts. *Vincent v. Blue Cross-Blue Shield of Ala., Inc.*, 373 So. 2d 1054, 1056 (Ala. 1979). However, damages for mental anguish may be recovered in cases "where the contractual duty or obligation is so coupled with matters of mental concern or solicitude, or with feelings of the party to whom the duty is owed, that a breach of that duty will necessarily or reasonably result in mental anguish or suffering." *Liberty Homes, Inc. v. Epperson*, 581 So. 2d 449, 454 (Ala. 1991) (quoting *B & M Homes, Inc. v. Hogan*, 376 So. 2d 667, 671 (Ala. 1979)). Contracts that fall within this exception and allow for mental anguish damages are typically contracts relating to the home. *See B & M Homes*, 376 So. 2d at 672 ("contracts dealing with residences are in a special

category and are exceptions to the general damages rule applied in contract cases which prohibits recovery for mental anguish." ); *Liberty Homes*, 581 So. 2d at 454.

The Plaintiffs have testified that their home has still not been returned to its pre-tornado condition. (Doc. 87-2, p. 271-72). Specifically, they have testified that their garage needs repairing, (Doc. 87-3, p. 63-64), that there are cracks in the plaster in the living room and bedroom, (Doc. 87-2, p. 276), and that the value of the bathroom has been reduced significantly. (Doc. 87-2, p. 278-288). The Plaintiffs have also testified that they had to spend additional money out of their savings account in order to return the home to its current diminished state. (Doc. 87-2, p. 174). Taken in the light most favorable to the Plaintiffs, this evidence creates a genuine dispute as to whether the Plaintiffs' home has been fully repaired, and whether the amount paid by Nationwide was sufficient to fully repair the Plaintiffs' home. As Nationwide was obligated under the contract to pay the cost to repair or replace the Plaintiffs' home up to the applicable liability limit, this creates a genuine dispute as to whether Nationwide fully performed under the contract.

As to the element of damages, when taken in the light most favorable to the Plaintiffs this same evidence also establishes that they may have suffered economic damage as a result of a breach of contract by Nationwide. In addition, because the contract at issue relates to the home and is the type of contract where mental anguish

damages can be obtained for breach, and the Plaintiffs have put forth evidence concerning mental anguish suffered as a result of the breach of contract, a reasonable jury could also return a verdict giving the Plaintiffs mental anguish damages. For these reasons, Nationwide's motion for summary judgment on the breach of insurance contract claim is due to be denied.

C.   Negligent or Wanton Performance of the Insurance Contract - Count V

As Nationwide correctly points out, Alabama law does not recognize a claim for negligence or wantonness in the handling of an insurance claim. *See Chavers v. Nat'l Sec. Fire & Cas. Co.*, 405 So. 2d 1, 5 (Ala. 1981); *Kervin v. Southern Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995). Any first party tort claim for the mishandling of an insurance claim can only arise under the tort of bad faith. *Chavers*, 405 So. 2d at 6. Since Plaintiffs allege only negligent and wanton performance of the insurance contract, summary judgment is due to be granted to Nationwide on Count V of the Plaintiffs' Complaint.

D.   Fraud - Counts VIII and IX

Plaintiffs allege that Nationwide, through Mayfield, engaged in fraudulent misrepresentations and deceit which induced them to hire GBS and suffer damages, and also allege that Nationwide has engaged in a pattern and practice of such fraud.

The Plaintiffs advance two alternative fraud arguments: first, that Mayfield fraudulently concealed his relationship with Chiaramonte, and second that Mayfield made fraudulent misrepresentations.

Nationwide argues that no fraudulent concealment has occurred because Mayfield owed the Plaintiffs no duty to disclose, his relationship with Chiaramonte was not a material fact that required disclosure, and because the Plaintiffs have suffered no damages. To make out a claim of fraudulent suppression, the Plaintiffs must show " (1) a duty on the part of the defendant to disclose facts; (2) concealment or nondisclosure of material facts by the defendant; (3) inducement of the plaintiff to act; (4) action by the plaintiff to his or her injury." *Freightliner, L.L.C. v. Whatley Contract Carriers, L.L.C.*, 932 So. 2d 883, 891 (Ala. 2005) (quoting *Lambert v. Mail Handlers Benefit Plan*, 682 So. 2d 61, 63 (Ala. 1996)). Whether a party has a duty to disclose is a question of law to be determined by the trial court. *Id.* A duty to disclose can arise from either a confidential relationship between the parties or the special circumstances of the case. *State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834, 839 (Ala. 1998). " Where the accused has superior knowledge of the suppressed fact and the defrauded party has been induced to take action which he might not otherwise have taken, the obligation to disclose is particularly compelling." *Dominick v. Dixie Nat. Life Ins. Co.*, 809 F.2d 1559, 1570 (11th Cir. 1987) (quoting *Mann v. Adams Realty*

*Co.*, 556 F.2d 288, 297 (5th Cir. 1977)). The materiality of a fact is a question for the jury. *Courtesy Ford Sales, Inc. v. Clark*, 425 So. 2d 1075, 1078 (Ala. 1983).

In *State Farm Mut. Auto. Ins. Co. v. Ling*, 348 So. 2d 472, 474 (Ala. 1977), the Alabama Supreme Court addressed a case where an insurance company insured both the claimant and tortfeasor in a particular case. The court determined that the insurance company's repeated assurances to the claimant that they would take care of his claim " lulled" the claimant into a false sense of security. *Id.* This " lulling" created a duty on the part of the insurance company to disclose to the claimant the fact that the statute of limitations on his claim was about to expire. *Id.* at 475. *See also Dominick*, 809 F.2d at 1571 (attempts by insurance company to win insured's confidence, even thought not rising to the level of lulling in *Ling*, still imposed a duty of fair dealing that required disclosure; even if no duty to disclose initially, " once it undertook to speak, it was required to make a full and fair disclosure" ).

Taking the facts in the light most favorable to the Plaintiff, the special circumstances of this case justify, as a matter of law, an obligation on Mayfield's part to disclose his conflict of interest. Mayfield called GBS to the Plaintiffs home, and then made repeated attempts to sell the Plaintiffs on GBS services, all while carrying on a romantic relationship with a GBS salesman who Mayfield admitted would receive commission's for sales. The existence of this relationship was known to Mayfield and

the Plaintiffs had no reasonable opportunity to learn of it, and the Plaintiffs might have

chosen not to hire GBS had they known that their adjuster's recommendations were

compromised by his romantic relationship with a GBS employee. Therefore, this

situation seems consistent with the situation described in *Dominick* where disclosure

was "particularly compelling." *Dominick*, 809 F.2d at 1570. Once Mayfield undertook

to involve Plaintiffs with GBS and use his prior relationship with GBS to sell the

Plaintiffs on their repair services, he took on an obligation to make a full and fair

disclosure of his exact relationship with GBS.

Whether Mayfield's relationship with Chiaramonte was material is a question

of fact for the jury, and it is clear that a reasonable jury could find that the fact that

Mayfield's romantic partner would make money off of sales by GBS was an important

fact that would have influenced the Plaintiffs decision. And finally, a reasonable jury

could also find that the Plaintiffs suffered damages, because if Plaintiffs had not been

induced to hire GBS, they would not have given GBS $30,000 for shoddy work and

had to spend money to fix the work performed by GBS.

The Plaintiffs argue in the alternative that Nationwide committed fraud by

making affirmative fraudulent representations. Nationwide argues that no fraudulent

misrepresentation occurred because there is no proof that Mayfield made any false

statement, the Plaintiffs did not reasonably rely on any representations Mayfield did

make, and the Plaintiffs have not suffered damages. The elements of fraudulent misrepresentation (whether the representation is made willfully, recklessly, or mistakenly) are as follows: "(1) there must be a false representation; (2) the false representation must concern a material existing fact; (3) the plaintiff must rely upon the false representation; and (4) the plaintiff must be damaged as a proximate result." *Jarrard v. Nationwide Mut. Ins. Co.*, 495 So. 2d 584, 586 (Ala. 1986). Whether a particular representation is an expression of opinion or a statement of fact depends upon the circumstances of the particular case, and in cases of doubt the question should be left to the jury. *Harrell v. Dodson*, 398 So. 2d 272, 274 (Ala. 1981) (quoting *Fid. & Cas. Co. of N.Y. v. J.D. Pittman Tractor Co.*, 13 So. 2d 669. 672 (Ala. 1943)). "Reliance requires that the misrepresentation actually induced the injured party to change its course of action." *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4 (Ala. 2004).

Plaintiffs have provided evidence that Mayfield told them that GBS performed well for him both in the Carolinas and Florida, (Doc. 87-2, p. 68-69), that he assured them that GBS was a good contractor, (Doc. 87-2, p. 84), that GBS had done a lot of work for him in the past, (Doc. 87-2, p. 104), and that the Plaintiffs would have their home repaired faster if they went with GBS over other contractors. (Doc. 87-2, p. 271). Mayfield has also testified that he did not do any work with GBS in Florida, but only Brian Smith's previous unrelated company Skyhigh, (Doc. 93-1, p. 29-30), that

Mayfield only had experience with GBS performing pack-out work in North Carolina, (Doc. 93-1, p. 89), and that GBS had only participated in two to three jobs for Nationwide during Mayfield's time in North Carolina. (Doc. 93-1, p. 20). Taking all evidence in the light most favorable to Plaintiffs, a reasonable jury could conclude that Mayfield's statements concerning the quality of GBS's previous work and the length and location of his history with GBS were false statements of material fact.

Nationwide has argued that Plaintiffs did not rely on Mayfield's statements because they performed limited independent research and made further attempts to hire other contractors, that any reliance was not reasonable because Plaintiffs had a duty to make reasonable efforts to protect themselves and not rely blindly on representations made concerning GBS, and that the Plaintiffs did not actually rely on the statements. The Plaintiffs have also put forward evidence that they heavily relied on Mayfield's repeated assurances concerning GBS in making their decision to hire GBS, and a reasonable jury could determine that they would not have hired GBS without Mayfield's statements.  It is unclear whether the Plaintiffs would have been able to discover the truth regarding Mayfield's statements and thus protect themselves from his misrepresentations. Taking the facts in the light most favorable to the Plaintiffs, a reasonable jury could determine that the Plaintiffs had no opportunity to discover the truth regarding Mayfield's statements, and that it was therefore

reasonable for the Plaintiffs to rely on those statements in choosing to hire GBS.

The analysis of the damages element is the same as under the alternative theory of fraudulent suppression, and therefore the damages element is met under the fraudulent misrepresentation claim as well. For these reasons, Nationwide's motion for summary judgment on the Plaintiffs' fraud claims is due to be denied.

E.    Negligent and Wanton Supervision - Count X

Nationwide argues for summary judgment as to Plaintiffs' Negligent and Wanton supervision claim because there is no evidence that Mayfield committed a common-law Alabama tort. To survive the motion for summary judgment as to this claim, Plaintiffs must offer substantial evidence of three elements. First, Plaintiffs must show that the employee committed a tort recognized under Alabama law. *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999). Second, the employer must have actual or constructive notice of the employee's conduct. *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001). Finally, to be liable the employer must disregard or fail to adequately respond to this notice. *Armstrong*, 817 So. 2d at 682.

Concerning the first element, the Plaintiffs have presented evidence raising a jury question as to whether Mayfield committed fraud, as discussed in Section III.B, *supra*. As to the second element, there is evidence that Mayfield introduced GBS to

customers, rode with a GBS employee to claims, and made fraudulent misrepresentations to induce Nationwide insureds to hire GBS, all while carrying on a romantic relationship with a GBS employee. When "repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant," it is proper to leave it to the jury to determine whether they would have come to the employer's attention had they exercised due care. *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889 (Ala. 1995). This evidence at least creates a jury question as to whether Nationwide would have obtained notice of these activities in the exercise of ordinary care. As to the final element, there is no evidence that Nationwide took any steps to respond to Mayfield's allegedly improper conduct at the time. For these reasons, summary judgment on this claim is due to be denied.

F.     Vicarious Liability - Count XI

Nationwide argues that it is not liable under Count XI because Mayfield did not commit a tortious act. Under Alabama law, an employer will be liable for the actions of an employee if the employee is acting within the scope of his employment. *Hulbert v. State Farm Mut. Aut. Ins. Co.*, 723 So. 2d 22, 23 (Ala. 1998). An act is within the scope of employment if it is "part of the duties the employee was hired to perform or if the act confers a benefit on his employer." *Id.* The conduct must not be compelled by wholly personal motives, but must be "in promotion of the business of his

employment." *Id.* (quoting *Solmica of the Gulf Coast, Inc. v. Braggs*, 232 So. 2d 638, 643 (Ala. 1970)).  An agent acts within the scope of his employment when he is performing actions so "closely connected" with his employment that they may be "regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Ex Parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998) (quoting Prosser & Keeton, *The Law of Torts* 503 (5th ed. 1984)).  This is true even when the employee's actions were expressly forbidden by his employer, and even in cases of intentional torts such as fraud. *Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 305 (Ala. 1986).  "If there is any evidence in the record tending to show directly, or by reasonable inference, that the tortious conduct of the employee was committed while performing duties assigned to him, then it becomes a question for the jury to determine whether he was acting from personal motive having no relationship to the business of the employer." *Id.*

The Plaintiff's have put forward substantial evidence that Mayfield committed tortious conduct in the form of fraudulent suppression of material facts or fraudulent misstatements of material fact. *See* Part III.D, *supra*. The Plaintiffs have put forward evidence that this tortious conduct was committed while Mayfield was in the midst of adjusting the Plaintiffs claim, and therefore performing duties assigned to him by Nationwide. Nationwide itself recommends certain contractors and repair shops to its

customers through its "Blue Ribbon" program. Therefore, a reasonable jury could determine that making recommendations on a contractor to perform repairs on Plaintiff's home was a method, though in this case an improper one, of carrying out his employment objectives, and was not done entirely for personal reasons having no relation to his employer's business. Therefore, summary judgment on this issue is due to be denied.

G.    Motion to Strike

Nationwide filed a motion to strike certain evidence that was submitted in support of the Plaintiffs' response to Nationwide's motion for summary judgment. (Doc. 95). However, it was not necessary for the Court to use the evidence at issue in the motion to strike when ruling on Nationwide's motion for summary judgment. Therefore, the motion is denied as moot.

IV.    Conclusion

For the foregoing reasons, Nationwide's motion for summary judgment (Doc. 90) is GRANTED on Count V, alleging negligent and wanton performance of the insurance contract. Nationwide's motion is DENIED on all of Plaintiff's other claims, and Nationwide's motion to strike certain evidence (Doc. 95) is DENIED as moot.

A separate order will be entered.

Done this 26th day of August 2014.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

177825